IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | | |
|---|---|---|
| SHERMAN JONES,<br><br>Plaintiff,<br><br>vs.<br><br>THE MON VALLEY INITIATIVE,<br><br>Defendant, | ) | 2:19-CV-00243-CRE |

**MEMORANDUM OPINION**[1]

Cynthia Reed Eddy, Chief United States Magistrate Judge.

This civil action involves Plaintiff Sherman Jones, who was formerly employed by Defendant The Mon Valley Initiative ("MVI").[2] Plaintiff claims he is entitled to damages due to him after being sexually harassed by his supervisor, Tracey Reaves ("Reaves"), and then retaliated against for reporting the harassment. Plaintiff's complaint sets forth claims for sexual harassment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. *See* Compl. (ECF No. 1). This court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. § 1331.

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. (ECF Nos. 9-11).

[2] "MVI's mission is to restore the economic vitality of the Mon Valley and unite the communities through workforce development, financial coaching, and real estate development." Affidavit of Laura Zinski (ECF No. 22-6) at ¶ 2.

Presently before the court is MVI's motion for summary judgment with respect to both claims. (ECF No. 23). For the reasons that follow, it is respectfully recommended that MVI's motion for summary judgment be granted.

## I. Factual and Procedural Background

Plaintiff was employed by MVI from October 9, 2017, to May 18, 2018. He began employment there as an Administrative Assistant. Def.'s Concise Statement of Material Facts ("CSF") (ECF No. 22) at ¶ 1. He was later promoted to Employment and Financial Coach. *Id*. In both roles, Plaintiff reported to Reaves. *Id*. at ¶ 2. Also during this time, Plaintiff worked closely with Camille Smith. Smith was responsible for training Plaintiff, and she also reported to Reaves. Smith's Depo. (ECF No. 22-3) at 4-5.

According to Plaintiff, during the course of his employment with MVI, Reaves made numerous comments to Plaintiff that were sexual in nature. For example, Plaintiff asserts that Reaves told Plaintiff that he "look[ed] good" and "nice," and was "sexy." Pl.'s Depo. (ECF No. 22-2) at 3. Additionally, Plaintiff claimed that Reaves touched his hands and told him that they "were soft." *Id*. Plaintiff testified that Reaves also tried to give him "hugs," and Reaves offered to pray with Plaintiff and would "come up behind [him] and put her hands on [his] shoulders." *Id*. In addition, Plaintiff recalled one incident where Reaves referred to Plaintiff receiving text messages, and Reaves said to Plaintiff, "Maybe if you wouldn't give it to them so good all these girls wouldn't be texting you so much." *Id*. at 5.

Smith testified that she witnessed some of this harassment, including Reaves' grabbing Plaintiff's hands and her "constantly" talking about Plaintiff's eyes. Smith's Depo. (ECF No. 22-3) at 7. Smith also heard Reaves refer to Plaintiff as "handsome." *Id*. at 8. Smith testified that she noticed Plaintiff was "uncomfortable" with Reaves' comments. *Id*. Another colleague, Earl

Lamar, also testified that he witnessed Reaves talking about Plaintiff's eyes and saw Reaves attempt to hold Plaintiff's hand. Lamar's Depo. (ECF No. 22-8) at 2.

With respect to another incident, according to Plaintiff, he, Reaves, Lamar, and Smith drove together to and from Harrisburg, Pennsylvania for a business trip. While Plaintiff was driving, and Reaves was in the front passenger seat, Reaves "asked the entire car, 'Where is the craziest place that anyone has had sex at?'" Pl.'s Depo. (ECF No. 22-2) at 3. Plaintiff testified that Reaves "pried for an answer," and he told her that he "wasn't going to answer that, because [he] thought that it was crazy." *Id*. at 4. Plaintiff felt that this question was directed at him. *Id*. Plaintiff then testified that Reaves went on to describe a situation where she performed oral sex on her boss. *Id*.

After this incident, in mid-April 2018, Plaintiff asserts that he complained about all of Reaves' behavior to Smith. Pl.'s Depo. (ECF No. 22-2) at 4. According to Plaintiff, Smith told him "that she was going to report everything"[3] *Id*. According to Smith, she directed Plaintiff to "higher ups." Smith's Depo. (ECF No. 22-3) at 9. In addition, in late-April 2018, Smith spoke to Laura Zinski, MVI's Chief Executive Officer, and April Hoover,[4] MVI's Chief Financial Officer, about Plaintiff. *Id*. at 11. Specifically, with respect to Reaves' treatment of Plaintiff, Smith told them about "salaries, and something about what was promised to him." *Id*. Additionally, Smith

---

[3] Plaintiff indicated that he was afraid he would lose his job if he directly reported anything about Reaves' behavior. Pl.'s Depo. (ECF NO. 22-2) at 5.

[4] Hoover testified that although she was in the same employment "category" as Reaves, she was one of two designees to whom an employee could report issues. Hoover's Depo. (ECF No. 22-4) at 2. According to MVI's Policy ("the Policy"), which was signed by Plaintiff upon his employment with MVI, "sexual misconduct, harassment or violence" should be immediately reported to the "CEO or Controller." *See* Policy (ECF No. 22-7) at 3. The Policy further provides that if one of the designees is not immediately available, the report should be made "to a supervisor." *Id*. at 4.

told them about Reaves' "demeanor" and "how she would be very angry, and then one moment she was very nice." *Id*. Smith recalls telling Hoover and Zinski that Plaintiff was "uncomfortable" with Reaves' behavior. *Id*. With respect to "sexual comments," Smith recalls only telling them about Reaves' comments regarding Plaintiff's eyes, and Smith asked Hoover and Zinski to speak to Plaintiff. *Id*. at 13. Smith testified that she did not relay specific instances of sexual harassment to Hoover and Zinski because she "felt it was best coming from" Plaintiff. *Id*. at 15.

Hoover spoke with Plaintiff by telephone on May 9, 2018. Pl.'s Depo. (ECF No. 22-2) at 6; *see also* Summary of Phone Call between Plaintiff and Hoover (ECF No. 22-5) at 2. According to Plaintiff, he told Hoover "about different incidents that were happening at the office and about how [Reaves] demeaned and degraded [him] as an employee." Pl.'s Depo. (ECF No. 22-2) at 6. Plaintiff testified that he did not mention the incident in the vehicle, or comments about "dreamy eyes" or having a "nice ass" because Plaintiff "was under the assumption that [Hoover] already knew [about those incidents] … [f]rom [Smith]." *Id*. Plaintiff further testified that he did tell Hoover that Reaves "physically touched" Plaintiff. *Id*. However, according to Plaintiff, he did not mention anything to Hoover that he believed Smith had already told Hoover, because it is "hard for [him] to tell that stuff over and over again."[5] *Id*.

On May 16, 2018, Plaintiff met with Zinski, Reaves, and Patrick Shattuck, who was the head of the real estate department. According to Plaintiff, he "tried to explain things," but Reaves

[5] Hoover summarized the conversation between she and Plaintiff in writing. *See* Summary (ECF No. 22-5) at 2. That summary reveals no mention of anything related to any sexual harassment of Plaintiff by Reaves. *See id*. Instead, it is evident that Plaintiff had numerous complaints about Reaves' management style. Plaintiff and Hoover discussed "[b]eing told a directive by [Reaves] and then being scolded for doing as she asked;" "[b]eing pulled away from working at a desk for requests that have nothing to do with the program work;" and being "[r]equested to write a summary on all the current work being done in Charleroi." *Id*. It is Plaintiff's position that the conversation between Plaintiff and Hoover was limited only to what Plaintiff believed Smith had not already told Hoover. Pl.'s Depo. (ECF No. 22-2) at 7.

would interrupt him and defend herself. Pl.'s Depo. (ECF No. 22-2) at 8. According to Zinski, at that meeting, Plaintiff "raised his concerns regarding [] Reaves' management style," but he did not raise concerns about sexual harassment. Affidavit of Zinski (ECF No. 22-6) at ¶¶ 13-14. On May 18, 2018, Zinski made the decision to terminate Plaintiff's employment "based upon his inability to carry out the tasks he was responsible for on his team and his lack of professionalism in his communications and behavior." *Id*. at ¶ 17.

Subsequently, Plaintiff filed a charge of discrimination with the EEOC. Plaintiff then filed the instant complaint on March 6, 2019, asserting claims for hostile work environment sexual harassment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

On March 9, 2020, after the completion of discovery, MVI filed the pending motion for summary judgment, a supporting brief, and CSF. (ECF Nos. 22-24). On March 30, 2020, Plaintiff responded with a brief in opposition and response to MVI's CSF. (ECF Nos. 25-26). MVI filed a reply. (ECF No. 27). As the present motion for summary judgment has been fully briefed, it is now ripe for disposition. The court's analysis follows.

## II. Standard of Review

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d

Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co*., 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

## III. Discussion

### *A. Hostile Work Environment Claim*

MVI first contends it is entitled to summary judgment with respect to Plaintiff's hostile work environment claim. "Under Title VII, an employer cannot discharge ... or ... discriminate against any individual with respect to ... compensation, terms, conditions, or privileges of employment because of such individual's ... sex." *Bumbarger v. New Enter. Stone & Lime Co.*, 170 F. Supp. 3d 801, 825 (W.D. Pa. 2016) (quoting *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (quoting 42 U.S.C. § 2000e–2(a)(1))) (internal quotation marks omitted). "[T]o have a valid claim [under Title VII, a p]laintiff must establish at least one of the two types of sexual harassment: hostile work environment or *quid pro quo*. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65-66 [] (1986) (describing the two types of sexual harassment claims)." *Ogilvie v. N. Valley EMS, Inc.*, 2008 WL 4761717, at *6 (E.D. Pa. 2008). Here, Plaintiff claims he was subjected to a hostile work environment. MVI argues that it is entitled to summary judgment because Plaintiff has not set forth a *prima facie* case. *See* MVI's Br. (ECF No. 24) at 6-11.

> In order for [a p]laintiff to make a *prima facie* showing of a hostile work environment, [he or] she must prove that (1) [he or] she suffered intentional discrimination because of [his or] her sex, (2) the discrimination was pervasive [or] regular, (3) the discrimination detrimentally affected [him or] her, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of *respondeat superior* liability.

*Bumbarger*, 170 F. Supp. 3d at 826 (quoting *Martinez v. Rapidigm, Inc.*, 290 Fed.Appx. 521, 524 (3d Cir. 2008)) (internal quotation marks omitted); *see also Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (clarifying that the "correct standard is severe *or* pervasive") (emphasis in original; internal quotation marks omitted). "To survive summary judgment, the plaintiff must first produce evidence that is sufficient to convince a reasonable factfinder to find all of the elements of a *prima facie* case of discrimination." *Taylor v. JFC Staffing Assocs.*, 690 F. Supp. 2d 357, 367 (M.D. Pa. 2009).

MVI argues that Plaintiff has failed to satisfy the first two elements of the *prima facie* case. Specifically, MVI contends that with respect to those elements, even when viewed in light most favorable Plaintiff, Plaintiff did not suffer "intentional harassment because of his sex," and even if he did, it was not "severe or pervasive." MVI's Br. (ECF No. 24) at 8. Plaintiff responds that "[t]he harassment was of a sexual nature, and conveyed a sexual desire directed at [Plaintiff]." Pl.'s Br. (ECF No. 25) at 5. Furthermore, Plaintiff asserts that the harassment "occurred consistently throughout his entire tenure" at MVI, despite Plaintiff asking Reaves to stop. *Id*.

To establish intentional harassment because of sex, a plaintiff "need not 'demonstrate direct evidence of [his] harasser's motivation for discrimination against [him]' nor 'direct proof that [his] harasser's intent was to create a discriminatory environment.'" *Dreshman v. Henry Clay Villa*, 733 F. Supp. 2d 597, 612 (W.D. Pa. 2010) (quoting *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 278 (3d Cir. 2001) (brackets in original)). "Further, discrimination is often difficult to discern from a factual record and 'intent to discriminate can be inferred' from more subtle actions." *Id*. (citations omitted).

In *Dreshman*, the court considered the aforementioned elements in determining whether the plaintiff set forth a *prima facie* case. In that case, the male plaintiff was employed by defendant for ten-and-a-half years. "He identified a number of incidents at the beginning of his employ, in 1997, some later incidents in 2000-2002, a few in 2004 or 2005, and others near the end of his employment, in 2007 and 2008." *Dreshman*, 733 F. Supp. 2d 597, 614 (W.D. Pa. 2010). These incidents included, *inter alia*, a number of verbal comments with sexual innuendo, as well as five incidents of touching that were "only a pinch or slight touch of [the p]laintiff's buttocks." *Id*. In considering the defendant's motion for summary judgment on the plaintiff's hostile work

environment claim, the court concluded that it could infer "sex based discrimination in accord with the first element." *Id*.

Turning to the instant case, a review of the record reveals that during Plaintiff's six months of employment, his female supervisor made numerous comments about Plaintiff's appearance and actions. She referred to him "on multiple occasions" as being "sexy," and told him his hands were "soft." Pl.'s Depo. (ECF No. 22-2) at 3. Plaintiff further testified that in mid-April 2018, Reaves described to Plaintiff a situation where she performed oral sex another man. *Id*. at 4. Additionally, Plaintiff testified that on one occasion, Reaves commented on Plaintiff's sexual relationships with other women. *Id*. at 5. Furthermore, Plaintiff's co-workers testified that Reaves was "constantly" talking about or commenting on Plaintiff's eyes. See Smith's Depo (ECF No. 22-3) at 7; Lamar's Depo. (ECF No. 22-8) at 2.

With respect to touching-related incidents, Plaintiff testified that Reaves "would try to give [him] hugs;" hold his hand, and "put her hands on [his] shoulders." Pl.'s Depo. (ECF No. 22-2) at 3. Smith also testified that she and Lamar "witnessed [] Reaves grabbing or attempting to grab [Plaintiff's] hands" on "several" occasions. Smith's Depo. (ECF No. 22-3) at 6; Lamar's Depo. (ECF No. 22-8) at 2.

Such testimony, if believed by a factfinder and viewed in the light most favorable to Plaintiff, could infer that references to Plaintiff's eyes and soft hands, coupled with commentary about sex-related topics, could indeed satisfy the first element of the *prima facie* case. Thus, because a factfinder could conclude that Plaintiff suffered intentional discrimination because of his sex, Plaintiff has satisfied the first element.

This court now turns to the second element of the *prima facie* case, the "severe or pervasive" element. "As to 'severity' and 'pervasiveness,' these 'are alternative possibilities:

some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive.'" *Hayes v. Silvers, Langsam & Weitzman, P.C.*, 2020 WL 977291, at *2 (E.D. Pa. 2020) (quoting *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017)). In considering these elements, a court looks at

> "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 [] (1993); *see also Caver v. City of Trenton*, 420 F.3d 243, 262–63 (3d Cir. 2005) ("[A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario.").

*Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013). Our courts have consistently held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to a violation of Title VII." *Hayes*, 2020 WL 977291, at *2 (internal quotation marks omitted).

In this case, Plaintiff has referenced instances of inappropriate comments and the touching of his hands and shoulders. *See* Pl.'s Depo. (ECF No. 22-2) at 3. In other cases, our courts have held that stronger language and even more offensive actions did not rise to the level of "severe or pervasive" conduct to satisfy the second element of the *prima facie* case. *See, e.g.*, *Grassmyer v. Shred-It USA, Inc.*, 392 F. App'x 18, 25 (3d Cir. 2010) (holding that defendant's "regularly [making] comments about the size of his genitalia and about the intimate details of his sexual relationships," referring to women as "bitches," and telling "of a colleague frequenting 'titty bars'" did not rise to the level of "severe or pervasive" harassment); *Jankowski v. Sage Corp.*, 2010 WL 1253542 (W.D. Pa. 2010) (holding that two instances of a supervisor "placing his hands on [the plaintiff's] shoulder and/or back and rubbing it; … 'probably' four instances of [the supervisor] 'brush[ing] up on [her]' … and … a single conversation during which [the supervisor] commented

on the intimacy of his marriage and perhaps implied that [the plaintiff] could satisfy him more than his wife" did not rise to the level of severe or pervasive harassment); *Merritts v. Pennsylvania*, 2020 WL 3128529, at *5 (M.D. Pa. 2020) (holding that "frequent comments about anal sex and oral sex … do not rise to the level of severity necessary to support a hostile work environment claim").

Instantly, there is no doubt that Reaves' conduct was inappropriate for a workplace, and this court does not condone her behavior. However, this court cannot conclude that the sex-related comments or the touching-related incidents rise to the level required to be so "severe or pervasive" as to establish a hostile work environment. This court acknowledges that these incidents occurred the entire time throughout Plaintiff's short employment at MVI; however, these less-than-severe incidents, which included mostly comments about Plaintiff's eyes and looks, were not so pervasive as to "alter the conditions of the victim's employment." *Dreshman*, 733 F. Supp. 2d at 615 (internal quotation marks omitted); *see Saidu-Kamara v. Parkway Corp.*, 155 F. Supp. 2d 436, 439 (E.D. Pa. 2001) ("It follows that the purview of Title VII does not extend to all workplace difficulties, even where the conduct at issue may be crass and unwarranted."). Accordingly, this court concludes that Plaintiff has not satisfied the second element; therefore, MVI's motion for summary judgment is granted with respect to Plaintiff's hostile work environment sexual harassment claim.

*B. Retaliation Claim*

MVI also asserts that Plaintiff has failed to meet his burden with respect to his retaliation claim. *See* MVI's Br. (ECF No. 24) at 11-20. "Under the anti-retaliation provisions of Title VII, a plaintiff must come forward with some evidence establishing that a *prima facie* case of retaliation exists." *Taylor v. JFC Staffing Assocs.*, 690 F. Supp. 2d 357, 369 (M.D. Pa. 2009). "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) [he or] she engaged

in a protected activity under Title VII; (2) the employer took an adverse action against [him or] her; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 320 (3d Cir. 2008).

Instantly, it is MVI's position that Plaintiff "did not engage in any protected activity" because he "did not report any incidents of alleged sexual harassment or misconduct to MVI management in accordance with the Policy." MVI's Br. (ECF No. 24) at 16. Furthermore, MVI argues that Plaintiff's reports to Smith did not constitute "protected activity because she was not in a management level position within MVI, nor was she ever [Plaintiff's] supervisor." *Id*. Plaintiff concedes that Smith "does not qualify as a management-level employee." Pl.'s Br. (ECF No. 25) at 7. Nevertheless, according to Plaintiff, he engaged in protected activity by reporting his complaints to Smith "given her apparent authority as an Assistant Director, and the fact that he expected her to relate his concerns to upper management." Pl.'s Br. (ECF No. 25) at 7.

"An employee engages in protected activity by complaining to his or her employer about conduct that is prohibited by Title VII." *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 555 (E.D. Pa. 2017). Those complaints "may consist of 'formal charges of discrimination as well as informal protests of discriminatory employment practices.'" *Kier v. F. Lackland & Sons, LLC*, 72 F. Supp. 3d 597, 616 (E.D. Pa. 2014) (quoting *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (internal quotations omitted)). "In order to constitute protected activity, however, a complaint 'must be specific enough to notify management of the particular type of discrimination at issue.'" *Id*.

Instantly, Plaintiff admits that he complained about the sexual harassment to Smith, and it was his expectation that Smith would report it to management. *See* Pl.'s Depo. (ECF No. 22-2) at

5. Furthermore, Plaintiff specifically testified that when he did have the opportunity to speak to management-level employees, he did not tell them about the sexual harassment because he believed Smith had already done so. *Id*. at 6. To overcome the fact that Plaintiff did not directly complain about sexual harassment to management, Plaintiff contends that his claim should survive summary judgment because "MVI received sufficient information from [] Smith that a reasonable employer would understand that a hostile work environment existed." *Id*. However, Smith testified that she also did not tell any management-level employees about Plaintiff's sexual harassment complaints.[6] *See* Smith's Depo. (ECF No. 22-3) at 13.

Based on the foregoing chain of events, even when the facts are viewed in the light most favorable to Plaintiff, Plaintiff's retaliation claim must fail as a matter of law. Plaintiff's complaining about sexual harassment to Smith was not protected activity because she was not, as Plaintiff concedes, a management-level employee. Moreover, even if Smith did relay some of Plaintiff's complaints to MVI management, the record does not support Plaintiff's claim that those complaints would have put MVI on notice that Plaintiff was concerned about Reaves' sexually harassing Plaintiff. Instead, Smith's testimony reveals that Plaintiff had concerns regarding the way Reaves treated him as an employee. Based on the foregoing, this court concludes that MVI is entitled to summary judgment with respect Plaintiff's retaliation claim because Plaintiff did not engage in protected activity.

## IV. Conclusion

Based on the foregoing, MVI's motion for summary judgment is granted with respect to Plaintiff's claims, and the case will be dismissed with prejudice. An appropriate Order follows.

---

[6] This is consistent with Plaintiff's testimony that he never confirmed with Smith exactly what Smith told management. Pl.'s Depo. (ECF No. 22-2) at 6.

Dated: July 20, 2020 .

BY THE COURT:

s/ Cynthia Reed Eddy

Chief United States Magistrate Judge

cc: Counsel of record
*via electronic filing*